IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER ELLIOTT, | No. 2:22-CV-1236-KJM-DMC-P |
| Plaintiff, | |
| v. | ORDER |
| M. CAMPOSE, | |
| Defendant. | |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Defendant's motion for summary judgment. See ECF No. 44. Plaintiff has filed an opposition, see ECF No. 46, and Defendant has filed a reply, see ECF No. 48. Also before the Court is Defendant's motion for terminating sanctions. See ECF No. 49. Plaintiff has filed an opposition, see ECF No. 50, and Defendant has filed a reply, see ECF No. 51. For the reasons discussed below, the Court finds that Defendant's motion for summary judgment is dispositive of the case on the merits. The Court, therefore, does not reach Defendant's motion for terminating sanctions, which the Court will recommend be denied as moot.

/ / /

/ / /

/ / /

1

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

1  'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).  It is sufficient that "the
2  claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions
3  of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.
4  　　　　　In resolving the summary judgment motion, the court examines the pleadings,
5  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.
6  See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see Anderson,
7  477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the
8  court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.
9  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
10 produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen
11 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
12 1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the
13 judge, not whether there is literally no evidence, but whether there is any upon which a jury could
14 properly proceed to find a verdict for the party producing it, upon whom the onus of proof is
15 imposed." Anderson, 477 U.S. at 251.

## I. PLAINTIFF'S ALLEGATIONS

This action proceeds on Plaintiff's original complaint.  See ECF No. 1.  Plaintiff names M. Campose, a correctional officer at California State Prison – Sacramento, as the only defendant.  See id. at 1, 2.  Plaintiff alleges that, on June 21, 2022, Defendant Campose walked up to his cell door and asked to see his penis.  See id. at 3.  According to Plaintiff, he then told Defendant Campose to get away from his cell door.  See id.

Next, Plaintiff claims that Defendant Campose took his food and walked away. See id.  Plaintiff also claims that Defendant Campose told Plaintiff he "was dead" if Plaintiff was "kicked out to the yard" for filing a sexual harassment grievance against another correctional officer, non-party R. Ehlers.  Id.

Plaintiff alleges violations of his constitutional rights based on sexual harassment, a threat to his safety, and retaliation.  See id.

3

## II.  THE PARTIES' EVIDENCE

A. **Defendant's Evidence**

Defendant's motion for summary judgment is supported by a statement of undisputed facts, see ECF No. 44-3, the declaration of former defense counsel Destiny Salcido, Esq., see ECF No. 44-4, and the declaration of Defendant Campose, see ECF No. 44-5.

According to Defendant, the following facts are not in dispute:

1. On June 21, 2022, Defendant Campose and a non-party correctional officer approached Plaintiff's cell door to deliver breakfast. See Plaintiff's deposition, 29:2-4, 38;12-22, and 44:17-23; see also Salcido declaration, Exhibit A (video footage).

2. Defendant Campose approached Plaintiff's cell at approximately 6:31 a.m., opened the food port, and attempted to deliver the meal to Plaintiff through the food port. See Salcido declaration, Exhibit A.

3. Defendant Campose did not enter Plaintiff's cell, and Plaintiff does not allege that Defendant Campose ever touched him during the encounter on June 21, 2022. See Plaintiff's deposition, 41:2-44:8; see also Salcido declaration, Exhibit A.

4. Plaintiff refused to accept the meal from Defendant Campose. See Salcido declaration, Exhibit A.

5. Defendant Campose retrieved the undelivered meal tray and handed the tray to the non-party officer who placed the tray on the food cart. Defendant Campose and the non-party officer then moved on to the next cell. The next inmate received his meal by 6:32 a.m. See Salcido declaration, Exhibit A.

6. At approximately 6:34 a.m. on June 21, 2022, Defendant Campose and the non-party correctional officer returned to Plaintiff's cell and the non-party correctional officer delivered Plaintiff's meal through the food port. See Salcido declaration, Exhibit A.

6. On June 21, 2022, and thereafter through the filing of the complaint in this case, Plaintiff was housed in the Psychiatric Services Unit and was not housed in the general population. See Salcido declaration, Exhibit E (Plaintiff's bed assignment).

7. Defendant Campose denied asking Plaintiff to see his penis or telling Plaintiff he "was dead" if he was placed on the general population yard for filing a sexual harassment grievance against non-party correctional officer R. Ehlers. Defendant Campose did not recommend, request, or otherwise ask the prison Classification Committee, which is responsible for inmate placement, to rehouse Plaintiff with the general population. See Campose declaration.

ECF No. 44-3.

      **B.**    <u>**Plaintiff's Evidence**</u>

In response to Defendant's motion for summary judgment, Plaintiff has filed a three-page opposition brief. <u>See</u> ECF No. 46. Plaintiff raises three "objections." <u>See id.</u> First, Plaintiff states that, contrary to Defendant's assertion, he was "kicked out" to B-yard "two days later," presumably meaning two days after the interaction in June 21, 2022. <u>Id.</u> at 2. Plaintiff states that he was "beat up" by non-party correctional officer D. Chavez. <u>Id.</u> Second, Plaintiff questions the authenticity of the video evidence submitted in support of Defendant's motion. <u>See id.</u> More specifically, Plaintiff states that, on the date in question, there was "no 'B.W.C.' at New Folsom." <u>Id.</u> It is unclear what Plaintiff means by "B.W.C." Third, and in contradiction to his first objection, Plaintiff states that he was "jumped" on the B-yard by non-party correctional officer D. Chavez in 2023 – after this lawsuit was filed in July 2022. While Plaintiff has not submitted any evidence in conjunction with his opposition, the Court will consider Plaintiff's verified original complaint as his declaration where appropriate.

### III. DISCUSSION

In the pending motion for summary judgment, Defendant argues: (1) Plaintiff cannot prevail on a First Amendment harassment claim because verbal harassment, without more, does not violate the Eighth Amendment; (2) Plaintiff cannot prevail on his claim that he was denied a meal because a deprivation of a single meal does not violate the Eighth Amendment and the evidence shows that, in any event, Plaintiff received his meal; and (3) Plaintiff cannot prevail on his First Amendment retaliation claim because the evidence shows that Plaintiff did not suffer any adverse action. <u>See</u> ECF No. 44-1. For the reasons discussed below, and given that Plaintiff has not produced any evidence to refute Defendant's evidence, the Court finds Defendant's arguments to be persuasive.

///
///
///
///

A. **Eighth Amendment Claims**

Liberally construed, Plaintiff's allegations suggest claims under the Eighth Amendment based on harassment and denial of meals. Each is discussed below.

Some general principles apply to both of Plaintiff's Eighth Amendment claims. The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

1. **Harassment**

Physical sexual assault by a prison official on an inmate is deeply offensive to human dignity, lacks any legitimate penological objective, and therefore violates the Eighth Amendment. Schwenk, 204 F.3d at 1196-97; Farmer v. Brennan, 511 U.S. 825, 834 (1994) (such sexual abuse is "simply not part of the penalty that criminal offenders pay for their offenses against society"). That said, inmate sexual harassment claims, which allege sexually inappropriate touching and/or sexually inappropriate comments, require a careful assessment of the unique circumstances of each case. Inmate sexual harassment claims that allege brief inappropriate touching by a correctional official are generally found to be non-cognizable, particularly if the alleged touching occurred pursuant to an authorized search. "Even if plaintiff

believed that there was a sexual aspect to the search, more is needed." Smith v. Los Angeles County, 2010 WL 2569232, *5 (C.D. Cal. 2010); adopted by 2010 WL 2572570 (C.D. Cal. 2010); aff'd, 452 F. App'x 768 (9th Cir. 2011).  And even outside the context of a search, if a defendant is alleged to have grabbed a plaintiff's buttocks for a few seconds, the claim does not give rise to an Eighth Amendment violation.  See Berryhill v. Schriro, 137 F.3d 1073, 1076 (8th Cir. 1998).  For a sexual harassment claim to be cognizable, Plaintiff must allege an "objectively serious injury (either physical or psychological.)"  Watison v. Carter, 668 F.3d 1108, 1112-14 (9th Cir. 2012) (quoting Berryhill, 137 F.3d at 1076).

In Watison, the Ninth Circuit affirmed the dismissal of an inmate's Eighth Amendment sexual harassment claim against a correctional officer who allegedly entered plaintiff's cell while plaintiff was on the toilet, rubbed his thigh against plaintiff's thigh and "began smiling in a sexual contact [sic]," then left plaintiff's cell laughing.  668 F.3d at 1112-14.  The Ninth Circuit ruled that "[t]he 'humiliation' Watison allegedly suffered from the incident with Officer LaGier does not rise to the level of severe psychological pain required to state an Eighth Amendment claim."  Id. at 1113.  Moreover, the Ninth Circuit found that "Officer LaGier's alleged wrongdoing was not objectively harmful enough to establish a constitutional violation . . . ."  Id. at 1114 (citations and internal quotation marks omitted).

While "the Ninth Circuit has recognized that sexual harassment may constitute a cognizable claim for an Eighth Amendment violation, the Court has specifically differentiated between sexual harassment that involves verbal abuse and that which involves allegations of physical assault, finding the later to be in violation of the [C]onstitution."  Minifield v. Butikofer, 298 F. Supp. 2d 900, 904 (N.D. Cal. 2004) (citing Schwenk v. Hartford, 204 F.3d 1187, 1198 (9th Cir. 2000).  Likewise, allegations of verbal harassment generally do not state a claim under the Eighth Amendment.  See Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987).  However, "[v]erbal harassment may violate the Constitution when it is 'unusually gross even for a prison setting and [is] calculated to and [does] cause [plaintiff] psychological damage.'"  Cox v. Kernan, 2019 WL 6840136, *5 (E.D. Cal. Dec. 16, 2019) (quoting Keenan v. Hall, 83 F.3d 1083, 1092

7

(9th Cir. 1996)).

Despite Keenan's rule, courts appear to be reluctant to recognize a verbal sexual harassment claim under the Eighth Amendment. For example, while a "defendant's alleged statement telling plaintiff to show him her tits would clearly be highly inappropriate, deeply offensive and disrespectful, and would serve no legitimate penological objective, court decisions addressing such claims do not support a conclusion that those alleged comments can be characterized as 'unusually gross even for a prison setting' or as being calculated to cause plaintiff psychological damage.'" Moore v. Calderon, 2021 WL 1541296, at *2 (E.D. Cal. Apr. 20, 2021) (citing Patrick v. Hernandez, 2018 WL 5095130, at *1, *3 (E.D. Cal. Oct. 17, 2018) (finding that plaintiff failed to state a claim for verbal sexual harassment in violation of the Eighth Amendment despite his allegations that defendant verbally harassed him by telling plaintiff, *inter alia*, to "suck my dick," "lick my nuts," and "you want it in the ass"). The court in Moore cited at least ten other cases supporting the proposition that highly inappropriate comments of a sexual nature do not give rise to a verbal harassment claim under the Eighth Amendment. See Moore, 2021 WL 1541296, at *2. The court went on to say:

> The comments allegedly made by the defendant here are obviously highly offensive and completely and totally inappropriate. In light of the sheer number of cases in which such highly inappropriate comments of a sexual nature are allegedly made in the prison setting, perhaps it is time for the Ninth Circuit to reevaluate and address the contours of those circumstances in which the comments are sufficiently "gross even for a prison setting" and to lead to an inference of being calculated to cause psychological damage, so as to state a cognizable Eighth Amendment claim. Until and unless that happens, however, "unfortunately for plaintiff, the law is clear: verbal harassment, even if sexual in nature, does not without more violate the Constitution."

Id. (citations omitted).

Defendant argues:

> Here, Plaintiff's sexual harassment claim relies only on his assertion that Officer Campos asked to see his penis on June 21, 2022. (ECF No. 1 at 3.) Video evidence confirms that Officer Campos did not enter Plaintiff's cell, nor does Plaintiff allege that Officer Campos physically touched him on June 21, 2022. (DUF No. 5.) The Eighth Amendment does not extend protection to Plaintiff because he only relies on allegations of verbal harassment and verbal harassment, alone, is

8

> insufficient to establish a constitutional violation. *Blacher*, 517 F. App'x at 565. Thus, Officer Campos should be granted summary judgment on Plaintiff's sexual harassment claim.

ECF No. 44-1, pg. 5.

Defendant's argument is persuasive. As Defendant notes, Plaintiff's allegations as well as the evidence submitted indicates that Plaintiff's claim is based on the assertion that Defendant Campose asked to see Plaintiff's penis. Plaintiff does not allege that Defendant Campose ever touched him. Assuming that Defendant Campose did in fact ask to see Plaintiff's penis, such conduct amounts to, at most, verbal sexual harassment. There has been no evidence presented to suggest that Defendant Campose's comment was unusually gross even for a prison setting or that the comment was calculated to cause Plaintiff psychological damage. Thus, Defendant has met the initial burden on summary judgment of identifying the non-existence of a genuine issue of material fact as to the nature and result of the alleged sexual harassment. Plaintiff has not met his burden of presenting evidence to show otherwise. Summary judgment in favor of Defendant on this claim is appropriate.

### 2. Denial of Meals

"The Constitution 'does not mandate comfortable prisons.'" Farmer, 511 U.S. at 832 (quoting Rhodes, 452 U.S. at 349); see also Hallett v. Morgan, 296 F.3d 732, 745 (9th Cir. 2002); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982), abrogated on other grounds by Sandin v. Conner, 515 U.S. 472 (1995). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. See Rhodes, 452 U.S. at 347; Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006); Osolinski v. Kane, 92 F.3d 934, 937 (9th Cir. 1996); Jordan v. Gardner, 986 F.2d 1521, 1531 (9th Cir. 1993) (en banc). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint, 801 F.2d at 1107; see also Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000); Wright v. Rushen, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

///

///

///

1           When determining whether the conditions of confinement meet the objective
2   prong of the Eighth Amendment analysis, the court must analyze each condition separately to
3   determine whether that specific condition violates the Eighth Amendment. See Toussaint, 801
4   F.2d at 1107; Wright, 642 F.2d at 1133. "Some conditions of confinement may establish an
5   Eighth Amendment violation 'in combination' when each would not do so alone, but only when
6   they have a mutually enforcing effect that produces the deprivation of a single, identifiable human
7   need such as food, warmth, or exercise – for example, a low cell temperature at night combined
8   with a failure to issue blankets." Wilson v. Seiter, 501 U.S. 294, 304 (1991); see also Thomas v.
9   Ponder, 611 F.3d 1144, 1151 (9th Cir. 2010); Osolinski, 92 F.3d at 938-39; Toussaint, 801 F.2d at
10  1107; Wright, 642 F.2d at 1133. When considering the conditions of confinement, the court
11  should also consider the amount of time to which the prisoner was subjected to the condition. See
12  Hutto v. Finney, 437 U.S. 678, 686-87 (1978); Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir.
13  2005). Courts within the Ninth Circuit have repeatedly rejected Eighth Amendment conditions-
14  of-confinement claims where the plaintiff alleges only a single deprivation of meals. See Khan v.
15  Payton, 2024 WL 4312222, at *9 (N.D. Cal. Sept. 25, 2025) (denial of six meals over 28-day
16  period does not rise to level of "sustained deprivation" to satisfy objective prong of Eighth
17  Amendment claim); Glover v. Evans, 2007 WL 3022249, at *1 (N.D. Cal. Oct. 15, 2007) (finding
18  no Eighth Amendment violation where the plaintiff was deprived of an adequate meal on one
19  occasion).
20          Defendant argues "[e]ven taking Plaintiff's allegations as true, Plaintiff does not
21  allege that he was denied meals on more than one occasion in this lawsuit." ECF No. 44-1, pg. 6.
22  The Court agrees. While Defendant Campose has presented evidence that Plaintiff was in fact
23  provided his breakfast on the morning of June 21, 2022, assuming that he was not and that his
24  allegation is true, Plaintiff's claim is based on the denial of a single meal on a single occasion.
25  Such a claim does not rise to an Eighth Amendment violation. Plaintiff has not presented any
26  evidence to counter his original allegations and show that he was denied meals over an extended
27  period of time.
28          Thus, consistent with the authorities cited above, the Court finds that Defendant is entitled

1  to summary judgment on Plaintiff's Eighth Amendment claim based on denial of breakfast on
2  June 21, 2022.
3       **B.**      **First Amendment Claim**
4       Plaintiff alleges retaliation in violation of the First Amendment.  In order to state a
5  claim under 42 U.S.C. § 1983 for retaliation, the plaintiff must establish that he was retaliated
6  against for exercising a constitutional right, and that the retaliatory action was not related to a
7  legitimate penological purpose, such as preserving institutional security.  See Barnett v. Centoni,
8  31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam).  In meeting this standard, the prisoner must
9  demonstrate a specific link between the alleged retaliation and the exercise of a constitutional
10 right.  See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866
11 F.2d 1135, 1138-39 (9th Cir. 1989).  The prisoner must also show that the exercise of First
12 Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory
13 conduct.  See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson,
14 408 F.3d 559, 569 (9th Cir. 2005).  Thus, the prisoner plaintiff must establish the following in
15 order to state a claim for retaliation: (1) prison officials took adverse action against the inmate;
16 (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse
17 action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a
18 legitimate penological purpose.  See Rhodes, 408 F.3d at 568.
19      Plaintiff's retaliation claim is based on Plaintiff's allegation that "the Defendant
20 told me I was dead if I get kicked out to the yard for filing sexual harassment on. . . [non-party] R.
21 Ehlers." ECF No. 1, pg. 3.  Here, the adverse action asserted is purely speculative.  Specifically,
22 the undisputed evidence shows that, from June 21, 2022, through the date Plaintiff filed this
23 action (and after), Plaintiff remained in the Psychiatric Services Unit and was not, during this
24 period, on the general population yard.  Further, the undisputed evidence shows that Defendant
25 Campose never recommended or endorsed Plaintiff to be moved to the general population yard.
26 Thus, Plaintiff did not suffer any adverse action and, as a result, he cannot prevail on a First
27 Amendment retaliation claim.
28 ///

///

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends as follows:

1. Defendant's motion for summary judgment, ECF No. 44, be granted.

2. Defendant's motion for terminating sanctions, ECF No. 49, be denied as moot.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  November 26, 2025

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE